IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01996-CNS-KAS

MICHELE ADAMS,

Plaintiff,

v.

MATRIX PROVIDERS INC. and
LOGISTICS HEALTH INCORPORATED,

Defendants.

---

# ORDER

---

Before the Court are Plaintiff's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure 59(e), ECF No. 110, Plaintiff's Motion for Leave to File out of Time Objections to Defendants' Bills of Costs, ECF No. 111, *see also* ECF Nos. 115, 116, 117, and Plaintiff's Amended Motion for Leave to Restrict the Declaration of Michele Adams in Support of Plaintiff's Amended Objections to Defendants' Bills of Costs, ECF No. 121. The motions are now fully briefed.[1] For the reasons explained below, the Court hereby **DENIES** Plaintiff's motion to alter or amend the judgment. ECF No. 110.

[1] In connection with her single motion to amend, Plaintiff filed two reply briefs totaling 16 pages. *See* ECF Nos. 130, 131. Plaintiff did the same and filed two replies in connection with her motion for leave. ECF Nos. 132, 133. Under the Court's practice standards, this is improper and can constitute grounds to strike one of Plaintiff's replies. *See* CNS Civ. Practice Standard 10.1(c)(1) (providing that "[r]eplies shall not exceed ten (10) pages."); *id.* at 1.1(c) ("The failure to follow these Practice Standards, the Local Rules of Practice, or the Federal Rules may result in an order striking the noncompliant filing without substantive consideration or other appropriate sanctions."). Despite her failure, yet again, to review and comply with the applicable rules and procedures, the Court nonetheless considers Plaintiff's replies.

Likewise, Plaintiff's motion for leave to file objections out of time, ECF No. 111, is also **DENIED**. However, Plaintiff's now unopposed amended motion for leave to restrict, ECF No. 121, is **GRANTED**. Additionally, having reviewed the response to the Order to Show Cause submitted by Plaintiff's counsel, Nicole C. Pearson, the Court hereby **ORDERS** Ms. Pearson to pay a monetary sanction in the amount of $1,000 for her violation of the Local Rules for the District of Colorado.

## I. BACKGROUND

Plaintiff's suit arose following her termination as audiologist in 2021. Plaintiff alleged that Matrix Providers Inc. (Matrix) and Logistics Health Incorporated (LHI) failed to reasonably accommodate her request for a religious exemption after LHI implemented a policy that required all patient-facing employees (like Plaintiff) to receive the COVID-19 vaccine. *See generally* ECF No. 1 (Compl.). In connection with her termination, Plaintiff brought two claims against Matrix for religious discrimination based on Matrix's alleged failure to accommodate her request for a religious exemption, including under Title VII, 42 U.S.C. §§ 2000e, *et seq.* (Count I), and under the Colorado Anti-Discrimination Act (CADA), C.R.S. § 24-34-402, *et seq*. (Count III). Plaintiff also brought a failure to accommodate claim under Title VII against LHI (Count II).

After the close of discovery, LHI and Matrix each filed motions for summary judgment. *See* ECF Nos. 76, 66. On June 25, 2026, the Court held oral argument on the motions (the Hearing), *see* ECF Nos. 103, 107, at which the Court granted both Defendants' summary judgment motions. At the Hearing, the Court also noted its concerns about certain unverifiable citations in Plaintiff's briefing, in addition to other

issues with the briefing detailed by the Court. *See* ECF No. 107 at 10:14–11:12, 13:9–14:15,32:12–19, 65:7–66:11. These issues include at least one phantom citation to a non-existent case, numerous instances of inaccurate citations of case holdings, and countless examples of Plaintiff failing to provide accurate record and evidentiary citations. *See id.* Final judgment was entered the same day. ECF No. 104.

After the Hearing, the Court received screenshots of an Instagram account with the handle "Nicolepearsonesq," which the Court believed belonged to Plaintiff's counsel, Nicole Pearson. One screenshot contained a photo posted in the early morning hours of June 25, 2026 showing briefs from this case accompanied by text stating, "Grifting is FUN!" ECF No. 106 at 14–15. The other screenshot showed a photo taken in the hallway outside the undersigned's courtroom, in violation of Local Rule 83.1 for the District of Colorado. D.C.COLO.LCivR 83.1(c), (d). ECF No. 105 at 2. Following receipt of these images, Ms. Pearson was ordered to show cause why the Court should not impose sanctions under Federal Rule of Civil Procedure 11(c)(3) for her violations of the Federal Rules of Civil Procedure and the Local Rules for the District of Colorado. *Id.* at 3.

Plaintiff now seeks to amend the final judgment. ECF No. 110. Plaintiff also seeks leave to file out of time objections to Defendants' bill of costs, and moves to restrict certain documents related to her request. ECF Nos. 111, 121.

## II. LEGAL STANDARD

"Motions to amend judgments under Rule 59(e) are disfavored and should be granted only in extraordinary circumstances." *Allam v. Serv. One, Inc.*, No. 24-cv-00465-MDB, 2025 WL 295017, at *2 (D. Colo. Jan. 24, 2025) (citing *Rivera v. JPMorgan Chase*

*Bank, N.A.*, 312 F.R.D. 216, 219 (D.D.C. 2015)). Relief under Rule 59(e) is appropriate when "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion should not "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citing *Van Skiver,* 952 F.2d at 1243); *see also Hill v. Bina*, No. 23-cv-03428-CNS-KAS, 2025 WL 1949216, at *1 (D. Colo. July 1, 2025) (Sweeney, J.) ("A Rule 59(e) motion to alter or amend the judgment should be granted only 'to correct manifest errors of law or to present newly discovered evidence.") (internal citation and quotation omitted). Thus, as the Court has explained, relief under Rule 59(e) may be granted only if there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice." *Freeman v. Raytheon Techs. Corp.*, No. 22-cv-01161-CNS-NRN, 2023 WL 4237087, at *3 (D. Colo. June 28, 2023) (internal citations omitted).

## III. ANALYSIS

### A. Plaintiff's Motion to Amend or Alter Judgment (ECF No. 110)

At the Hearing, the Court granted summary judgment to Defendants on all of Plaintiff's claims, including as to Plaintiffs' claims brought against each Defendant under Title VII, as well as Plaintiff's claim against Matrix under CADA. *See* ECF No. 107.[2] In the

[2] The Court also noted that, despite referencing a retaliation claim in her response briefing, Plaintiff failed to plead a retaliation claim against LHI. ECF No. 107 at 32:20–23. The Court further noted that because Plaintiff offered no evidence in support of her religious discrimination retaliation claim "other than [evidence related to her] arguable failure to accommodate" claim, there was no genuine issue of material fact as to that claim. *Id.* at 66:12–67:16 (noting that Plaintiff offered no "evidence of separate intent to retaliate or punish her for the mere fact that she asked for [an] accommodation").

instant motion, Plaintiff challenges only the Court's conclusions as to her religious discrimination, failure to accommodate claims against each Defendant arising under Title VII. *See* ECF No. 110.

Under Title VII, it is "unlawful . . . for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e–2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j). Assessing whether a Plaintiff has established a Title VII claim requires the Court to determine whether the employer "reasonably accommodated [Plaintiff's] religious practice . . . and, if not, whether [it] could have done so without undue hardship to its business." *Id.*

As the Tenth Circuit has explained, answering these inquires requires the application of a "burden-shifting analysis." *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018) (citing *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155–56 & 1155 n.6 (10th Cir. 2000)). "At the *first step* of that analysis, it is the employee's burden to establish a prima facie claim by showing that 1) the employee has a bona fide religious belief that conflicts with a job requirement, 2) *the employee informed the employer of this conflict*; and 3) the employer fired the employee for failing to comply with the job requirement." *Id.* (citing *Thomas*, 225 F.3d at 1155) (emphasis added). "Once a plaintiff makes its showing, the burden shifts to the defendant" to "(1) 'rebut an element of Plaintiffs' prima facie claims'; (2) 'show that it provided a reasonable accommodation for Plaintiffs' religious practice'; or (3) 'show that it could not offer a reasonable

accommodation without undue hardship.'" *Christians in the Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, No. 24-2072, 2025 WL 2114295, at *7 (10th Cir. July 29, 2025) (citing *Tabura*, 880 F.3d at 550). "Title VII, thus, *requires* that 'an employer, short of undue hardship, make reasonable accommodations to the religious needs of its employees.'" *Tabura*, 880 F.3d at 549 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66 (1977) (cleaned up)); *see also Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Cnties.*, 735 F.2d 388, 390 (10th Cir. 1984) (an employer violates section 2000e–2(a)(1) of Title VII when it does not make reasonable accommodations, short of undue hardship, for the religious practice of employees).

To "'[a]ccommodate . . . means . . . allowing the plaintiff to engage in [his] religious practice despite the employer's normal rules to the contrary.'" *Tabura*, 880 F.3d at 550 (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015) (omissions in original)). However, "[a]n employee is not entitled to the accommodation of his choice," *id.* at 551 (citing *Ansonia*, 479 U.S. at 68), and "a reasonable accommodation does not necessarily spare an employee from any resulting cost," *Christmon v. B&B Airparts, Inc.*, 735 F. App'x 510, 514 (10th Cir. 2018) (citing *Pinsker v. Joint Dist. No. 28J*, 735 F.2d 388, 390–91 (10th Cir. 1984)); *see also id.* (An "accommodation may be reasonable even though it is not the one that the employee prefers." (citation omitted)).

An employer also need not offer an employee accommodations that would amount to an undue hardship. 42 U.S.C. § 2000e(j). To establish undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600

U.S. 447, 470 (2023). Safety considerations are significant in determining whether a proposed accommodation would cause undue hardship, and Title VII does not require that safety be subordinated to the religious beliefs of an employee. *EEOC v. Jetstream Ground Serv., Inc.*, 134 F. Supp. 3d 1298, 1334 (D. Colo. 2015); *see also Henry v. S. Ohio Med. Ctr.*, 155 F.4th 620, 633 (6th Cir. 2025) ("[A]n accommodation that significantly increases the health and safety risks of vulnerable patients constitutes an undue hardship.").

1. *LHI's Summary Judgment Motion*

At the Hearing, the Court dismissed Plaintiff's failure to accommodate claim against LHI because Plaintiff proffered no evidence to show that she ever notified LHI about her need for a religious accommodation. *See* ECF No. 107 at 30:7–32:11. In doing so, the Court explained that to sustain a Title VII failure to accommodate claim against either Defendant, Plaintiff *first* had to make a *prima facie* showing as to each element of the claim before a factfinder could determine whether either Defendant violated Title VII. *Id.* at 32:2–11. And with respect to LHI specifically, without showing that LHI was notified of Plaintiff's requested accommodation—one of the *prima facie* elements of a failure to accommodate claim—, she could not establish that LHI violated Title VII. *Id.* at 31:14–20.

Plaintiff disagrees with the Court's conclusion in the motion and contends that Rule 59(e) relief is warranted because the Court (1) misapprehended Plaintiff's principal legal challenge to LHI's blanket no-exemptions policy, and (2) improperly concluded that LHI's COVID-19 vaccination policy was lawful "'as a matter of law'" without considering Plaintiff's cited authorities. *See* ECF No. 110 at 4. In response, LHI contends that such

relief is not warranted because Plaintiff's arguments were previously raised and rejected by the Court, making them improper for a Rule 59(e) motion. *See* ECF No. 127 at 3–4. LHI also maintains that the Court correctly concluded that Plaintiff's failure to accommodate claim could not be sustained. *See id.* at 5–9. The Court agrees with LHI.

As to the first point, LHI is correct that Plaintiff's challenge rehashes the same arguments she previously made and that the Court explicitly rejected at the Hearing. In her opposition to LHI's summary judgment motion, Plaintiff argued that LHI's vaccination policy violated Title VII as a matter of law. *See* ECF No. 90 at 18–19. Likewise, at the Hearing, Plaintiff explicitly took aim at LHI's vaccination policy and argued that LHI, under "its unlawful policy[,] . . . never even tried to accommodate [religious employees] to begin with." ECF No. 107 at 26:12–21. Plaintiff then argued that her failure to accommodate claim should survive regardless of whether Plaintiff did or did not notify LHI of her request for a religious accommodation because LHI had in place "a vaccination policy [that] . . . summarily, blanketly, categorically refuse[d] to provide religious employees with an accommodation." *Id.* at 27:1–4.[3]

These are the same arguments Plaintiff advances now, as she admits in the instant briefing. ECF No. 110 at 4.[4] That fact alone is fatal to Plaintiff's argument, as Rule 59(e)

[3] This is despite the fact that Plaintiff cited to and referenced the correct framework in her briefing, which acknowledges that notice is a required element of any Title VII, failure to accommodate claim. *See* ECF No. 90 at 17, 18.

[4] In the motion, Plaintiff states "[t]hroughout summary judgment briefing and again during oral argument, Dr. Adams consistently argued that [LHI's] policy violated federal law because it foreclosed the individualized assessment of religious accommodation requests required by Title VII and operated as a categorical prohibition against accommodating subcontractor employees with sincerely held religious beliefs." ECF No. 110 at 4.

is not an appropriate vehicle to "advance arguments that could have been raised in prior briefing." *Servants of Paraclete,* 204 F.3d at 1012. And at the Hearing, the Court explicitly rejected the position Plaintiff raises again here. In doing so, the Court noted that it "read[s] the failure to accommodate case law in a dramatically different fashion than the plaintiff's attorney." ECF No. 107 at 30:7–32:23. Based on the Court's explicit consideration and rejection of Plaintiff's previously articulated position and novel interpretation of a Title VII failure to accommodation claim, Plaintiff cannot use Rule 59(e) to try and take another bite at the apple. *See, e.g.*, *Haslett v. Keirton, Inc.*, No. 21-cv-01112-MEH, 2022 WL 16527941, at *1 (D. Colo. Oct. 28, 2022).

Nevertheless, even considering the merits of Plaintiff's argument once more, the Court again rejects her position as it did at the Hearing. Plaintiff's contention that the Court failed to address the "threshold legal issue" of whether, under Title VII, LHI is permitted to "implement and enforce a policy that categorically refuses to offer or even consider religious accommodations for subcontractor employees," ECF No. 110 at 5, not only misstates the events that occurred at the hearing—it also misstates the law. It is also offered to the Court with little reference to any supportive legal authority.[5] *See, e.g.* ECF No. 110 at 6; ECF No. 130 at 4–6 (contending on reply that the Court did not resolve the

[5] The same was true at the Hearing. When the Court asked Plaintiff to identify the authority to support her novel interpretation of Title VII failure to accommodate claim, Plaintiff pointed only at the statutory text of Title VII itself. *See* ECF No. 107 at 17:9–18 ("THE COURT: Well, okay, but what case are you citing for the proposition that an employer needs to proactively assess whether an accommodation is necessary to a policy before it's instituted? MS. PEARSON: I'm not citing to a case. I'm citing to 42 U.S.C. 2000(e), I'm citing to Title VII which imposes on every employer an affirmative obligation that an employer must offer a reasonable accommodation unless that employer establishes or proves that doing so would cause it an undue hardship."). But as explained herein and at the Hearing, the Tenth Circuit has consistently interpreted Title VII as requiring a plaintiff to make a *prima facie* showing of an employer's failure to accommodate in order for such a claim to survive. *See Tabura*, 880 F.3d at 549 ("At *the first step of that analysis*, it is the employee's burden to establish a prima facie claim by showing . . .") (citation omitted, emphasis added).

"threshold issue" of "whether LHI could categorically refuse to offer religious accommodations to subcontractor employees in the first instance and then rely upon the resulting absence of an accommodation request as a defense to liability" without including a single citation to any statutory or other legal authority).

This is unsurprising because, as explained at the Hearing, Tenth Circuit precedent "[has] made clear" that establishing a Title VII failure to accommodate, disparate treatment claim (like Plaintiff's claim here)[6] requires that the Court *first* consider whether Plaintiff has established a *prima facie* case. ECF No. 107 at 30:14–16. Indeed, as the Tenth Circuit has explained, where "a 'failure to accommodate' claim" is brought as "a claim for 'disparate treatment'," Plaintiff "*must ultimately satisfy the general elements of a 'disparate treatment' claim*" in order to survive summary judgment. *Tabura*, 880 F.3d 544, 549 n.3 (citing *Abercrombie & Fitch Stores*, 575 U.S. at 771–72 (emphasis added)). That Plaintiff cannot do so here is fatal to her claim against LHI. Thus, the Court remains confident in its conclusion that contrary to Plaintiff's position, the "threshold question" under Title VII is *not* whether an employer's policy is unlawful as written, even if the employer was not on notice about a need to offer accommodations—it is whether Plaintiff has made the requisite showing to establish a *prima facie* claim.[7] *See, e.g.*, *Christmon*, 735 F. App'x at 513 (explaining that plaintiff "bears the *initial burden* to show a prima facie

[6] Plaintiff admitted at the Hearing and in the briefing that her failure to accommodate claim against LHI was brought under a "disparate treatment" theory and not a "disparate impact" theory. *See* ECF No. 107 at 25:12–15 ("THE COURT: Are you claiming this is a disparate impact case? MS. PEARSON: The allegations in the complaint are disparate treatment, not disparate impact, Your Honor."); ECF No. 130 at 3 (confirming that Plaintiff's challenge to LHI's vaccination policy is a disparate-treatment claim).

[7] As it did at the Hearing, the Court assumes without deciding the LHI was Plaintiff's employer for purposes of this Order.

case of religious discrimination for failure to accommodate") (citing *Thomas*, 225 F.3d at 1155) (emphasis added).[8]

Because Plaintiff failed to put forward any evidence showing that she did so here, her Title VII claim against Defendant fails.[9, 10]

*2. Matrix's Summary Judgment Motion*

With respect to Matrix's summary judgment motion, at the Hearing, the Court also determined that Plaintiff's failure to accommodate claim against Matrix failed because, based on the undisputed evidence, Matrix offered Plaintiff a reasonable accommodation

[8] As explained at the Hearing, for Plaintiff to sustain her failure to accommodate claim against LHI, "we have to look at whether the plaintiff established that *prima facie* case, and based on the evidence before the Court, I cannot conclude that she has. It is admitted and undisputed she informed Matrix, indisputably her employer. There is zero evidence she informed LHI. There is zero evidence before me that Matrix informed LHI or passed on an accommodation request." ECF No. 107 at 31:14–20; *see also id.* at 32:2–5 (explaining that "the deposition cites offered by the plaintiff do not support the notion that she provided notice, and, in fact, actually support the notion that she *did not* provide notice" to LHI) (emphasis added).

[9] The Court also notes that, in the motion to alter judgment, Plaintiff repeatedly states that the Court found "as a matter of law" that LHI's vaccination policy was valid. *See generally* ECF No. 110. Putting aside that the Court did not explicitly say as much at the Hearing, the Court's statement that it "already determined that [LHI's decision to impose a vaccination] requirement . . . was not a violation of Title VII" was made in the context of its discussion about Matrix's summary judgment motion. *See* ECF No. 107 at 63:10–13. But as explained above and extensively at the Hearing, this conclusion was not the *basis* for the Court's decision to grant summary judgment. Rather, it was a result of its analysis and reached only after concluding that Plaintiff's failure to provide any evidence showing that she notified LHI of her request for religious accommodation was fatal to her Title VII claim against LHI. *See, e.g.*, ECF No. 107 at 31:14–20; *see also id.* at 32:2–5. The Court reaches the same conclusion now for the same reason.

[10] Had Plaintiff wanted to hold LHI liable based solely on the existence of its allegedly discriminatory vaccination policy, irrespective of the fact that Plaintiff never notified LHI about her need for a religious accommodation, perhaps a disparate impact claim would have been more appropriate. *See, e.g.*, *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1220 (10th Cir. 2013) ("The disparate impact 'doctrine seeks the removal of employment obstacles, not required by business necessity, which create built-in headwinds and freeze out protected groups from job opportunities and advancement.'") (citing *E.E.O.C. v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1274 (11th Cir. 2000). However, because Plaintiff's failure to accommodate claim alleges disparate *treatment*, *see* ECF No. 107 at 25:12–15, ECF No. 130 at 3, she must first establish a *prima facie* case regarding the religious discrimination that *she* suffered by showing that she notified LHI of her request for an accommodation. *See Tabura*, 880 F.3d at 549 (determining if an employer violated Title VII in a failure to accommodate, religious discrimination claim, courts employ a "burden-shifting analysis," and "[a]t the first step of that analysis*, it is the employee's burden to establish a prima facie claim*") (citing *Thomas*, 225 F.3d at 1155–56, 1155 n.6) (emphasis added).

that Plaintiff rejected. ECF No. 107 at 62:19–22. Secondarily, the Court further determined that even if Matrix had not offered Plaintiff a reasonable accommodation, it would have been unable to accommodate Plaintiff's request to continue working unvaccinated without enduring undue hardship. *Id.* at 63:23–63:3.[11] The Court also dismissed Plaintiff's claim against Matrix under CADA based on Plaintiff's failure to exhaust the required pre-filing administrative remedies. ECF No. 107 at 36:16–37:15.[12]

In the instant motion, Plaintiff now argues (again without citation to the record or any legal authority) that the Court granted Matrix summary judgment by improperly resolving in Matrix's favor certain disputed material facts, including as to "issues concerning (1) whether [Matrix] communicated and offered Dr. Adams a reasonable accommodation; (2) whether [Matrix] fulfilled its independent obligations under Title VII by engaging in the interactive process in good faith, or instead improperly shifted those obligations to Dr. Adams; and (3) whether [Matrix's] stated reason for terminating Dr. Adams was genuine or pretextual." ECF No. 110 at 8. In response, Matrix contends that Plaintiff's arguments fail because the Court already ruled on these issues at the Hearing and concluded that there were no factual disputes precluding it from granting summary judgment. ECF No. 126 at 4. Considering each of these grounds below, the Court agrees with Matrix.

---

[11] The Court also noted, as it did at the Hearing, that Plaintiff "wholly failed to respond" to Matrix's undue hardship in her summary judgment response brief. ECF No. 107 at 62:23–64:9; *see generally also* ECF No. 88. Additionally, Plaintiff's motion to amend appears to take no issue at all with the Court's conclusion regarding the undue hardship demonstrated by Matrix. ECF No. 110.

[12] Plaintiff does not appear to challenge this conclusion in her motion to alter or amend the judgment. ECF No. 110.

Summary judgment is proper only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "After the moving party has met its initial burden of showing an absence of a genuine issue of material fact, 'the burden then shifts to the nonmoving party, who must offer evidence of specific facts that is sufficient to raise a 'genuine issue of material fact.'" *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (citing *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999)). "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

At the summary judgment stage, the Court views the record in the light most favorable to the nonmoving party and determines whether a rational trier of fact could find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In doing so, the Court "must draw all reasonable inferences in favor of the nonmoving party." *Pioneer Centres*, 858 F.3d at 1334 (citation omitted). However, "the court is 'not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones.'" *Gutierrez v. Bd. of Cnty. Comm'rs, Shawnee Cnty., Kan.*, 791 F. Supp. 1529, 1535 (D. Kan. 1992) (citing *Lucas v. Dover Corp.,* 857 F.2d 1397, 1401 (10th Cir. 1988)). "[A]n inference is unreasonable if it requires 'a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'" *Pioneer Centres*, 858 F.3d at 1334 (citing *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008)).

a. *Reasonable Accommodation*

Plaintiff first contends that the Court concluded that Matrix offered Plaintiff a reasonable accommodation and alternative to compliance with LHI's vaccination policy by improperly construing the disputed facts in Matrix's favor. ECF No. 110 at 8. But Plaintiff's argument incorrectly conflates the identification of facts in the record and the act of drawing inferences from those facts. For instance, Plaintiff argues that a reasonable jury could conclude that Matrix "failed to communicate or offer [Plaintiff] a reasonable accommodation or that the accommodations it identified were not reasonable" based on evidence showing that:

1) Matrix sent Plaintiff an email with a link to "hundreds of alternative job postings" to which she could apply without having to comply with the vaccine mandate;
2) Accepting any other alternative audiologist position would have required Plaintiff to relocate across the country;
3) The only position permitting Plaintiff's continued employment as an audiologist with Matrix was located in California;
4) Matrix never responded to Plaintiff's inquiries regarding either her current position in Knoxville or the position in California; and
5) Matrix never informed Plaintiff that she was qualified for any corporate position.

*See* ECF No. 110 at 8. To the best of the Court's knowledge (and despite the fact that Plaintiff fails to identify any specific exhibit in her briefing), the only record evidence relevant to Plaintiff's arguments can be found in Exhibit T, an email chain submitted with Plaintiff's opposition to Matrix's summary judgment motion, and which the Court considered at the Hearing. *See* ECF No. 88-5 (Ex. T). Indeed, after reviewing the record evidence, including Exhibit T, the Court found that a reasonable jury would conclude that Matrix offered Plaintiff a reasonable accommodation. *See* ECF No. 107 at 59:16–62:22.

Specifically, and while reading through Exhibit T at the Hearing, the Court noted that Matrix offered Plaintiff three options after LHI's vaccine policy was announced: (1) become vaccinated and remain in her current position, (2) look for other employment opportunities within Matrix not at an LHI clinic (and where Plaintiff would not need to receive the COVID-19 vaccine to remain employed), or (3) remain employed with Matrix until the vaccination deadline. ECF No. 107 at 60:3–21.

The Court also noted that Plaintiff cited to Exhibit T as an "e-mail exchange in which [Plaintiff] claims she was not responded to appropriately" by Matrix in connection with Title VII's interactive accommodation process. *Id.* at 60:11–24. At the Hearing, the Court concluded that such an inference was not reasonable or supported by the evidence. *Id.* at 61:6–62:1. Indeed, in response to Matrix's email outlining her three options, Plaintiff asked, "Is there no option to test weekly?" ECF No. 88-5 at 3. In response, a Matrix employee informed Plaintiff that "LHI was not allowing that option" but noted that "other opportunities [at Matrix] do have this option." *Id.* Plaintiff then followed up and responded with an email stating, "I noticed on the jobs page there is already an audiologist position listed for LHI-Knoxville. I guess I'm already out the door? I also noticed it is full-time!!! Just a way to get someone to get on board, I suppose. It's too bad, really." *Id.* at 4. A few minutes after that, Plaintiff sent another email stating, "[a]dditionally, there is only one non-LHI audiology position and it's in California." *Id.*

After reviewing these emails and reading them into the record at the Hearing, the Court noted concluded that:

> This is the sum total of what apparently was ignored by HR. The Court concludes that that is not a failure to engage in the interactive process.

> *There were no questions posed.* It is clear what is happening is *Dr. Adams is looking through the jobs, seeing what's available, but then took no action to follow up on a job, apply for a job, inquire about a job, ask further details about any position*, and Matrix was left wondering what she had elected to do, which was apparently not accept any of the jobs or apply for any of the jobs.

ECF No. 107 at 61:15–24 (emphasis added). The Court then stated that, "in light of that circumstance, I find that Matrix's offer was reasonable and the accommodation offered was reasonable." *Id.* at 61:24–62:1.

Upon reviewing Plaintiff's arguments again now, the Court remains confident in its conclusion that since no substantive questions from Plaintiff remained unanswered, it would be unreasonable to infer that Matrix failed to participate in Title VII's interactive process. *See, e.g.*, *Gutierrez.*, 791 F. Supp. at 1535 ("[T]he court is 'not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones.'") (citation omitted). Indeed, to the extent that the Court drew any inferences based on Exhibit T, it was simply to conclude that "Matrix was left wondering what [Plaintiff] had elected to do" after sending her the list of alternative jobs. ECF No. 107 at 61:18–24. But this is not an adverse inference drawn against Plaintiff—it is a reasonable inference drawn based on an email chain in which no substantive questions from Plaintiff were left unanswered. And Plaintiff offers no other evidence to show that she took Matrix up on its offer to help her transition or find another role available within Matrix. Thus, there is no need for the Court to draw the inferences that Plaintiff (without authority) proposes—it need only draw such inferences that are reasonable and in Plaintiff's favor. *See Lucas*, 857 F.2d at 1401 (The court is "not required to evaluate every

conceivable inference which can be drawn from evidentiary matter, but only reasonable ones.”).[13]

Accordingly, the Court is satisfied that based on the record before it, a reasonable jury could find that Matrix offered Plaintiff reasonable accommodations in response to her request for a religious accommodation, but that Plaintiff failed to pursue any such options after her preferred method (weekly testing) was denied.

b. *Interactive Process*

Plaintiff next challenges (again, without any reference to or citation of any legal authority) the Court’s conclusion that Matrix fulfilled its obligations under Title VII to engage in good faith in an interactive process regarding Plaintiff’s requested religious accommodation. ECF No. 110 at 8–9. However, the Court remains convinced that Matrix sufficiently engaged in the interactive accommodations process required by Title VII.

As discussed above and at the Hearing, Matrix offered Plaintiff alternative job opportunities that would permit her to remain employed without complying with the vaccination requirement. ECF No. 107 at 61:15–24 (discussing ECF No. 88-5 (Ex. T)). Matrix also informed Plaintiff that it would “be happy to assist in any way possible” and told Plaintiff to let Matrix’s human resources team know if she had any questions about the process of finding an alternative role. ECF No. 88-5 at 1. Under the case law, this is sufficient to show that Matrix put forth a good faith effort to address Plaintiff’s requested

[13] That Matrix did not identify specific positions for Plaintiff or identify specific corporate positions in which she might be interested does not mean that the proposed accommodations it offered were not reasonable, particularly since the Court saw no evidence that Plaintiff requested such assistance from Matrix. *See Christmon.*, 735 F. App’x at 514 (An “accommodation may be reasonable even though it is not the one that the employee prefers.”) (citation omitted).

accommodations. *See, e.g.*, *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1110 (D. Colo. 2021) (the interactive process only requires employers to make a good faith effort to seek accommodations). That Plaintiff failed to ask more than a single substantive follow-up question (to which Matrix responded) does not render their engagement insufficient, particularly where Plaintiff did not ask Matrix for any specific assistance. *See* ECF No. 88-5. Nor does the fact that Plaintiff requested a specific accommodation (weekly testing) that Matrix was unable to provide. *Id.* at 3. Denying Plaintiff's requested accommodation does not mean that Matrix failed to engage in the interactive process. *See Tabura*, 880 at F.3d at 551 (an employee is not entitled to the accommodation of their choice).

Contrary to Plaintiff's framing otherwise, the email chain in Exhibit T ends with two emails sent by Plaintiff that Matrix did not answer does not establish that Matrix failed to engage in the interactive process with her. *See* ECF No. 88-5. However, the Court is again confident that a reasonable jury could conclude that no substantive questions from Plaintiff remained unanswered such that it is reasonable to conclude that Matrix failed to engage in the accommodation process. *See id.*[14]

[14] To the extent Plaintiff's question "I guess I'm already out the door?" was asked with the intention of receiving a response from Matrix, *see* ECF No. 88-5, the Court is satisfied that a reasonable jury could conclude that Matrix's failure to answer that question has no impact on the reasonableness of the accommodations offered by Matrix to Plaintiff since there was no possible accommodation being offered that would have allowed Plaintiff to keep her current position, absent her complying with LHI's vaccination requirement. Nor does Plaintiff identify this question as one from which the Court should draw any specific inference.

Accordingly, the Court remains confident in its conclusion that Matrix sufficiently engaged with Plaintiff in the interactive accommodation process to satisfy its Title VII obligations.

c. *Reason for Termination*

Finally, Plaintiff contends that the Court improperly resolved in Matrix's favor the disputed factual question of whether Matrix's stated reasons for terminating Dr. Adams were genuine or pretextual. ECF No. 110 at 9. In the instant motion, Plaintiff argues that this gives rise to a factual dispute improper for summary judgment resolution because the record evidence shows that Matrix "granted [Plaintiff's] religious accommodation request, reposted her existing position before terminating her employment, failed to respond to her inquiries regarding available accommodations, and ultimately informed her that her employment was ending because she had 'declined the COVID-19 vaccine,' not because she rejected a reasonable accommodation." *Id.* Plaintiff contends that "from this evidence," a reasonable jury could conclude that "the true reason for [Plaintiff's] termination was her inability to comply with a vaccination requirement that conflicted with her sincerely held religious beliefs." *Id.* Again, Plaintiff offers this argument without reference to any specific legal authority or record cites. *See id.*

As an initial matter, the Court notes that this is not the same pretext argument made by Plaintiff in her opposition to Matrix's summary judgment brief. There, Plaintiff argued that "a reasonable jury could find [Matrix's] proffered justification is inconsistent with governing law, and infer that it is pretextual" because Matrix's contention that Plaintiff "'never identified another position' [with Matrix] after receiving a religious exemption" is

based on a "legally flawed" understanding of Matrix's Title VII obligations. ECF No. 88 at 23–24. But Plaintiff's new argument, underpinned by a different set of facts, is improper fodder for a Rule 59(e) motion which "cannot be used to advance [new] arguments that could have been raised in prior briefing." *Grynberg v. Total S.A.,* 538 F.3d 1336, 1354 (10th Cir. 2008). That Plaintiff failed to raise the issue in her opposition to Matrix's summary judgment motion is fatal to her claim.[15]

However, even reviewing the record evidence that Plaintiff generally describes and viewing it in the light most favorable to her, Plaintiff fails to show that Court improperly applied the summary judgment standard here. Despite Plaintiff's contentions otherwise, the "conflicting evidence" does not convince the Court that a reasonable jury could find that Matrix's termination of Plaintiff was pretextual. For one, Plaintiff fails to cite any specific record evidence in connection with her argument, leaving the Court without anything specific to review to consider. *See* ECF No. 110 at 9. Additionally, as explained above, to the extent Plaintiff contends that the alleged evidence she references arises from Exhibit T, none of the emails sent between Plaintiff and Matrix show anything other than the fact that Matrix was willing to offer Plaintiff certain accommodations that would allow her to continue to remain employed with Matrix while declining to receive the COVID-19 vaccine, albeit in a different position than the one in which she was previously employed. *See* ECF No. 88-5. The only reasonable, non-speculative inference arising

[15] That Plaintiff's opposition to Matrix's summary judgment motion references "the record[] as a whole," ECF No. 88 at 24, does not establish that her pretext argument was raised previously. Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1)(A). Plaintiff's reference to the factual record "as a whole" does not meet this burden.

from such evidence shows that Plaintiff's employment with Matrix ended after she failed to accept one of the reasonable accommodations offered to her.

Accordingly, consistent with the foregoing, Plaintiff's motion to amend or alter the judgment, ECF No. 110, is denied.

**B. Plaintiff's Motion for Leave to File Objections Out of Time (ECF No. 111)**

The Court turns next to Plaintiff's motion for leave to file her Objections to Defendants' Bill of Costs out of time. *See* ECF No. 111 at 1. Defendants oppose this request, arguing that Plaintiff should not be allowed to file her Objections out of time. *See generally* ECF No. 119; ECF No. 120. The Court agrees with Defendants.

Many legal issues are complex, and demand lengthy analysis of parties' arguments. *See, e.g., McDonogh v. Millaudon*, 44 U.S. 693, 694 (1845) ("The issues in this case are somewhat complicated; it has been argued at great length and with eminent ability."); *Trump v. CASA, Inc.*, 606 U.S. 831, 856 (2025) ("As with most disputed issues, there are arguments on both sides."). Others are not. *See Davis v. Wakelee*, 156 U.S. 680, 685 (1895) ("The facts of this case are not complicated . . . nor its merits difficult to understand.").

Plaintiff's motion falls—squarely—into latter camp. She acknowledges missing a nose-on-the-face plain filing deadline. *See, e.g.,* ECF No. 111 at 2. As Defendants explain in the two responses they were forced to file, there is absolutely no legal or factual basis for entertaining this request. *See, e.g.,* ECF No. 119 at 5; ECF No. 120 at 7. Put a different way, there is nothing complicated about missing a deadline without any permissible justification. *Cf. McDonogh*, 44 U.S. at 694.

Regardless, for the reasons set forth in both responses, Defendants face the prejudice of delay to these proceedings based on Plaintiff's deliberate conduct, *see, e.g.,* ECF No. 119 at 4, and there is nothing in the record to indicate that Plaintiff's neglect was in any way excusable, or that good cause exists to grant her request. *See Schupper v. Edie*, 193 F. App'x 744, 746 (10th Cir. 2006); *Cooper v. Shelter Gen. Ins. Co*., No. 21-cv-02957-REB-NYW, 2022 WL 1123069, at *4 (D. Colo. Apr. 14, 2022) ("Defendant's excuses for the failure to timely file the Motion for Extension of Time are all circumstances within Defendant's control."); *Wason Ranch Corp. v. Hecla Mining Co*., Civ. No. 07-cv-00267-EWN-MEH, 2008 WL 793638, at *2 (D. Colo. Mar. 24, 2008) ("The reason for delay, including whether the moving party acted in good faith and whether the moving party was in control of the circumstances surrounding the delay, is the most relevant portion of this inquiry." (citation modified)). The Court further notes that it is hardly *good cause* or *excusable neglect* to blame a client for an attorney's failures, including the attorney's deliberate choice not to meet an unambiguous deadline. *See* ECF No. 111 at 1–2 (arguing that "immediately before filing, Dr. Adams decided to including sensitive, private financial information in her declaration in support" (grammatical error in original)); ECF No. 133 at 6 (advancing the same blame-shifting argument); *Ghamrawi v. Case & Assocs. Props. Inc*., 116 F. App'x 206, 210 (10th Cir. 2004).

"Every day individuals do not do an infinite number of things." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 552 (2012). For Plaintiff, that includes counsel's failure to seek an extension before the applicable deadline passed; the failure to meaningfully

confer with opposing counsel; and the failure to advance any argument that persuades the Court that it should not enforce an unambiguous deadline. Her motion is denied.

**C. Plaintiff's Motion to Restrict (ECF No. 121)**

The Court next considers Plaintiff's Amended Motion for Leave to Restrict the Declaration of Michele Adams in Support of Plaintiff's Amended Objections to Defendants' Bills of Costs. ECF No. 121. Although the motion initially stated that Defendants opposed the requested relief, the Court understands that Defendants' position has now changed, and neither LHI nor Matrix oppose Plaintiff's proposed filing restrictions. *See* ECF No. 125 at 2 (stating that "neither Defendant opposes Plaintiff's Motion to Restrict").

Accordingly, the Court hereby grants Plaintiff's amended motion to restrict, ECF No. 121. The Court will maintain ECF Nos. 122, 123 at a Level 1 restriction unless and until there is a further order of the Court.

**D. Plaintiff's Response to the Order to Show Cause (ECF No. 106)**

Finally, the Court turns to the response to the Court's show cause order submitted by Plaintiff's counsel, Nicole Pearson. ECF No. 106 (responding to ECF No. 105). In the response, Ms. Pearson provided an explanation regarding the citation to a nonexistent case in her briefing, *see* ECF No. 88 at 18 (citing *Ricks v. Starbucks,* No. 21-cv-01386, 2023 WL 8872476, at *6 (D. Colo. Dec. 22, 2023)), as well as an explanation for certain Instagram posts for which Ms. Pearson took responsibility. *See* ECF No. 106.

At the Hearing, the Court described numerous errors in Plaintiff's response briefs to Defendants' summary judgment motions, including one citation to a non-existent case.

ECF No. 107 at 10:14–11:12, 13:9–14:15,32:12–19, 65:7–66:11. In her response to the show cause order, Ms. Pearson represents that the nonexistent case, *Ricks v. Starbucks*, was included in Plaintiff's briefing inadvertently. By way of explanation, Ms. Pearson offers that at the time briefing was due, she was handling a significant family emergency and required additional help from an unnamed "colleague" and her paralegal to assist in finalizing the briefing. ECF No. 106 at 5–9. She further explained that while the case and quoted language exist, they are not part of the same case, and the incorrect case citation was included inadvertently. *Id.* at 6–7. While doubting the likelihood of this explanation, given the underlying stressors, the Court elects to admonish Ms. Pearson and assumes that, in the future, she will not delegate any portion of her work to an unnamed colleague without, at least, verifying each of her cited authorities, in order to avoid the risk of potentially harming her client's interests.

However, Ms. Pearson's response also notes that, with respect to the other legal citations in her briefing, "[o]f these thirty-six [cases cited in the response to Matrix's summary judgment motion], *Ricks* is the only case that the Court and [Matrix] *believe* is fake and *potentially* AI-generated." ECF No. 106 at 5 (emphasis added). Based on this statement, the Court finds that it is important to remind Ms. Pearson that the inclusion of *Ricks v. Starbucks* was far from the only the questionable choice made in preparing Plaintiff's opposition briefs, as detailed by the Court at the Hearing. *See* ECF No. 107 at 10:14–11:12, 13:9–14:15,32:12–19, 65:7–66:11.[16] Other errors include, for instance,

[16] Ms. Pearson also misattributed language from a 2020 Supreme Court decision to Justice Scalia, who passed away in 2016. *See* ECF No. 107 at 28:6–16.

numerous citations that do not stand for the proposition for which they are cited. *See id.* Whether these misstatements were the result of the use of an AI legal search, or simply poor and unexacting legal judgment, is unclear. Regardless, they are highly concerning to the Court nonetheless.

And while the Tenth Circuit has stated that "there is nothing inherently problematic with the use of GenAI in the practice of law, careless use of the tool can waste both judicial resources and the opposing party's time and money, and it can damage the credibility of the legal system." *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *6 (10th Cir. Feb. 9, 2026) (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)). This pronouncement rings quite true in this case. Regardless of whether and to what extent Ms. Pearson or her colleague did (or did not) use AI in preparing Plaintiff's summary judgment responses, it is clear is that Ms. Pearson's briefing methods not only wasted the time of the Court and opposing counsel, *see* ECF No. 107 at 13:9–14:15, 39:9–23 (counsel for Matrix explaining that essentially two citations per page were "wholly inaccurate" or "in general did not stand for the points that Ms. Pearson asserted" after going through each authority in Plaintiff's response brief)—they also reflect poorly on Plaintiff and, of course, Ms. Pearson herself. An attorney's job is, in large part, about exercising judgment on behalf of a client. Family emergencies notwithstanding, the Court hopes that this incident serves as a warning to Ms. Pearson to better exercise hers, regardless of whether she intends to continue using AI tools in the future. *See, e.g.*, *Amarsingh*, 2026 WL 352016, at *6 ("As one court has aptly put it, 'the use of artificial intelligence must be accompanied by the application of actual intelligence in its

execution.'" (citing *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-CV-326, 2025 WL 574234, at *4 (S.D. Ind. Feb. 21, 2025), *report and recommendation adopted as modified*, 2025 WL 1511211 (S.D. Ind. May 28, 2025) (cleaned up)).

Turning next to Ms. Pearson's Instagram stories, the Court accepts the explanation in her response regarding the photo overlaid with text that states "Grifting if FUN!" ECF No. 106 at 14–15. However, the Court again cautions Ms. Pearson to use her best judgment before posting something like that again, lest it be misconstrued.

With respect to her Instagram post containing a photo of the hallway outside the undersigned's courtroom, Ms. Pearson stated that when she took the photo, she

> was unaware that Local Rule 83.1 prohibits photography in public areas of the courthouse in addition to courtrooms themselves. She understood the posted sign outside the courtroom as prohibiting photographs, recordings, and streaming **of courtroom proceedings,** and mistakenly believed that stepping outside the courtroom avoided any violation.

ECF No.106 at 5 (emphasis in original). But as the Court explained in the order to show cause, Local Rule 83.1 for the District of Colorado is unequivocal, and provides that "[a] person shall not . . . take photographs or [] make audio or video recordings ***in any public area*** in the United States Courthouse." ECF No. 205 at 3 (citing D.C.COLO.LCivR 83.1(c), (d) (emphasis added)). By failing to follow Local Rule 83.1 specifically, Ms. Pearson acted in contravention to a Local Rule that is, at least in part, aimed at ensuring the safety of the courthouse, the judicial staff, and those involved in its proceedings. In doing so, Ms. Pearson harms not only her own reputation, but her client, as well. And because Ms. Pearson violated Local Rule 83.1 specifically, she also ran the risk of

incurring criminal consequences, as well. *See* D.C.COLO.LCivR 83.1(e) ("Violation of this rule may constitute contempt of court punishable by incarceration and the imposition of fines, costs, and attorney fees.").

Moreover, based on Ms. Pearson's subsequent behavior, the Court is not convinced that her violation of the Local Rules was the result of a misunderstanding or mistake. More likely, rather, it seems that this was the result of Ms. Pearson's failure to read or to comply with the Local Rules. Indeed, as noted above, Ms. Pearson filed multiple reply briefs in excess of 10 pages total in connection with her motion to amend and motion to seek leave, *see* ECF Nos. 130, 131, 132, 133, in violation of the Court's practice standards. *See* CNS Civ. Practice Standard 10.1(c)(1) ("Replies shall not exceed ten (10) pages."). That she did so without bothering to seek leave from the Court is telling and reinforces the Court's belief that Ms. Pearson feels the rules do not apply to her.[17] But of course they do. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994) ("attorneys are bound by the local rules of the court in which they appear"); D.C.COLO.LCivR 1.1(c) ("[The Local Rules] apply in all civil actions, cases, and proceedings (civil actions) in the United States District Court for the District of Colorado").

Because the Court is not confident that Ms. Pearson has read and understands the undersigned's practice standards or the Local Rules for the District of Colorado, as she is required to do,[18] it now restates what the undersigned's practice standards make

[17] Although doing so does not violate a particular procedural rule, Ms. Pearson's motion for leave to file objections to Defendants' bills of costs out of time further reinforces the Court's perception of Ms. Pearson as someone practicing law as if the rules do not apply to her.

[18] *See, e.g.*, *U.S. v. Windrix,* 405 F.3d 1146, 1157 (10th Cir. 2005) (holding attorney was charged with knowledge of local rules and law); *see also In re Home & Family, Inc.*, 85 F.3d 478, 480 (10th Cir. 1996) (holding counsel is charged with knowledge of rules of procedure).

clear: "The failure to follow [the Court's] Practice Standards, the Local Rules of Practice, or the Federal Rules may result in an order striking the noncompliant filing without substantive consideration or ***other appropriate sanctions***." CNS Civ. Practice Standard 1.1(c). Here, because Ms. Pearson has now repeatedly demonstrated that she is unconcerned with following the procedural rules that apply to all litigants, the Court finds the imposition of sanctions is appropriate. Specifically, the Court finds that a monetary sanction, to be borne by Ms. Pearson and not her client, is sufficient to reiterate to Ms. Pearson that she is required to follow the relevant Practice Standards, Local Rules, and Federal Rules applicable in whatever jurisdiction she may practice.

Accordingly, consistent with the foregoing, the Court hereby sanctions Plaintiff's counsel, Nicole Pearson, in the amount of $1,000 pursuant to Rule 11(c)(1), Local Rule 83.1(e), and CNS Civ. Practice Standard 1.1(c). Such sanctions are DUE and PAYABLE to the Registry of the United States District Court for the District of Colorado no later than September 18, 2026.

## IV. CONCLUSION

Consistent with the foregoing, the Court ORDERS that

1) Plaintiff's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure 59(e), ECF No. 110, is **DENIED**;
2) Plaintiff's Motion for Leave to File out of Time Objections to Defendants' Bills of Costs, ECF No. 111, is **DENIED**; and
3) Plaintiff's Amended Motion for Leave to Restrict the Declaration of Michele Adams in Support of Plaintiff's Amended Objections to Defendants' Bills of

Costs, ECF No. 121, is **GRANTED**, and the Court will maintain ECF Nos. 122, 123 at a Level 1 restriction unless and until there is a further order of the Court.

Additionally, with respect to Plaintiff's counsel, Nicole C. Pearson, the Court hereby **SANCTIONS** Ms. Pearson in the amount of $1,000 pursuant to Rule 11(c)(1), Local Rule 83.1(e), and CNS Civ. Practice Standard 1.1(c), and such sanctions are **DUE** and **PAYABLE** to the Registry of the United States District Court for the District of Colorado no later than **September 18, 2026**.

DATED this 27th day of August 2026.

BY THE COURT:

____________________________________
Charlotte N. Sweeney
United States District Judge